UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KENNETH MAXWELL,

    -against-                                                        92 CR 1147 (KMW)
                                                                    10 CV 2383 (KMW)

UNITED STATES OF AMERICA,                          **ORDER**

                Defendant.

-------------------------------------------------------------x

WOOD, U.S.D.J.:

Pursuant to 28 U.S.C. § 2255, Petitioner Kenneth Maxwell[1] ("Maxwell") moves to vacate, set aside, or correct the judgment entered by the undersigned on April 8, 1997.[2] For the reasons set forth below, the Court DENIES Maxwell's motion.

### I. Background

In 1991, Maxwell burglarized several American Express offices and stole travelers checks, blank credit cards, and machines with which to print credit cards. On October 28, 1992, Maxwell pleaded guilty to six counts of credit card fraud, one count of attempted credit card fraud, one count of interstate transportation of stolen credit cards, and four counts of possession of false document-making implements, in *United States v. Maxwell*, No. 92 Cr. 60 (S.D.N.Y. 1992) ("*Maxwell I*"). The Honorable Thomas P. Griesa sentenced Maxwell to a term of 18 months of imprisonment followed by two years of supervised release.

---

[1] The Petitioner has used multiple other names, including David Livingston, Todd Mueller, Arnold Striggles, and John Michaels. The Court refers to him by the name used in the caption of these cases, Kenneth Maxwell.
[2] Because Maxwell proceeds *pro se*, the Court construes his submissions to "raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks and citations omitted).

While the charges in *Maxwell I* were pending, Maxwell impersonated an Assistant United States Attorney in an elaborate attempt to escape from federal custody at the Metropolitan Correctional Center.  On July 1, 1993, Maxwell pleaded guilty to one count of attempted escape and two counts of unlawful impersonation of a federal officer, in *United States v. Maxwell*, No. 92 Cr. 1147 (S.D.N.Y. 1993) ("*Maxwell II*").  *United States v. Maxwell*, 92 CR 1147, 1994 WL 68174 at *1 (S.D.N.Y. Feb. 28 1994); *United States v. Maxwell*, 92 CR 1147, 1994 WL 115981 at *1 (S.D.N.Y. March 30, 1994).  The Honorable Morris E. Lasker sentenced Maxwell to a term of 40 months of imprisonment followed by three years of supervised release.

Maxwell appealed from the July 1, 1993 judgment in *Maxwell II* and subsequently entered into a September 21, 1994 stipulation with the Government to withdraw his appeal pending further proceedings in the district court pursuant to Federal Rule of Civil Procedure 11.

In separate proceedings, Maxwell pleaded guilty on September 23, 1994 to one count of bank fraud in the Northern District of Illinois and was sentenced to a term of 33 months of imprisonment and five years of supervised release, in *United States v. Mueller*, No. 94 Cr. 594 (N.D. Ill. 1994) ("*Maxwell III*").  This sentence was to run concurrently with the sentence imposed in a prior case in the Northern District of Illinois, *United States v. Mueller*, No. 91 Cr. 251 (N.D. Ill. 1991).

The Federal Bureau of Prisons (the "B.O.P.") aggregated the sentences imposed in *Maxwell II* and *Maxwell III* and calculated a term of imprisonment of 41 months and two days that commenced on April 15, 1993.  With credit for good conduct, the B.O.P calculated Maxwell's release date as April 8, 1996.  Maxwell subsequently obtained habeas relief from the Middle District of Pennsylvania, crediting him with 171 days spent in Illinois state custody from January 3, 1991 to June 22, 1991, which had not previously been credited towards the service of

an Illinois state sentence or the federal sentence imposed in *United States v. Mueller*, 91 Cr. 251 (N.D. Ill. 1991).  *Maxwell v. Holland*, No. 95 Civ. 1910 (M.D. Pa. 1996).  On February 20, 1996, after receiving the order from *Maxwell v. Holland* crediting Maxwell with 171 days of time served, the B.O.P. determined that Maxwell had fully served the terms of *Maxwell II* and *Maxwell III* as of October 20, 1995 and therefore should be released from federal custody. Pursuant to a detainer lodged by New Jersey corrections officials, Maxwell was then transferred to New Jersey custody to serve the remainder of his state sentence.

 On April 8, 1997, the undersigned resentenced Maxwell on the attempted escape and unlawful impersonation convictions in *Maxwell II* to a term of 41 months of imprisonment and a three-year term of supervised release.  Maxwell stated that he was requesting a 41 month sentence to run consecutively to the unrelated 60-month New Jersey State sentence, on which he was then incarcerated, so that he could receive any possible benefits associated with release from federal rather than state custody.  In fact, because the time Maxwell spent in federal custody from October 20, 1995 until February 20, 1996 was not credited towards the service of any other federal sentence, one month was creditable to the additional one month of imprisonment imposed in the amended judgment in *Maxwell II* on April 8, 1997.  Thus, upon resentencing on April 8, 1997, Maxwell's sentence both commenced and concluded, when his presentence credit was taken into account.

 Upon the completion of his state sentence, the State of New Jersey released Maxwell from its custody and into federal supervision, on October 30, 1999.  Maxwell promptly reported to the federal probation office.  Maxwell states that he asked about the remaining month on his *Maxwell II* sentence and was told by a probation officer that she would look into it.  Maxwell

then signed an "Acknowledgement of Conditions" regarding the terms of his supervised release and began his terms of supervised release on both *Maxwell I* and *Maxwell II*.

On March 3, 2000, Maxwell was arrested and charged by the State of New York with forgery, possession of a forged instrument, grand larceny, and criminal possession of stolen property. Maxwell was subsequently indicted on federal wire fraud charges for a scheme to defraud friends and family members of federal detainees by deceiving them into sending him money, supposedly for the detainee's bail. On December 18, 2000, Maxwell pleaded guilty to multiple counts of wire fraud, in *United States v. Maxwell*, No. 00 Cr. 483 ("*Maxwell IV*"). The Honorable Lewis A. Kaplan sentenced Maxwell to a term of 135 months of imprisonment, followed by a three-year term of supervised release. *See United States v. Livingston*, 28 Fed. Appx. 40 (2d Cir. 2001).

Maxwell's conviction on the wire fraud charges violated the terms of his supervised release from the convictions in *Maxwell I* and *Maxwell II*. On April 25, 2008, Maxwell pleaded guilty to the two violations of supervised release (one for *Maxwell I* and one for *Maxwell II*) and was sentenced by the undersigned to two 24-month terms of imprisonment to run consecutively with each other and consecutively with the 135-month sentence in *Maxwell IV*, followed by a one-year term of supervised release. Maxwell appealed from the judgment of this Court, arguing that (1) the district court lacked jurisdiction to hear allegations of supervised release violations in *Maxwell I* and *II*, and (2) the Government's pursuit of the supervised release violation charges violated the plea agreement in *Maxwell II*, thereby depriving Maxwell of due process. The Second Circuit affirmed this Court's judgment on March 31, 2009. *United States v. Maxwell*, 318 Fed. Appx. 23, 27 (2d Cir. 2009); *cert. denied*, 130 S.Ct. 222 (2009). The Second Circuit found that "Maxwell's terms of federal supervised release in both *Maxwell I* and *Maxwell II*

commenced upon his release from state custody in October 1999" and thus rejected Maxwell's jurisdictional challenge. *Maxwell*, 318 Fed. Appx. at 26. The Second Circuit also rejected Maxwell's challenge to his plea agreement as having been waived. *Id.* at 27.

On March 3, 2010, Maxwell filed a writ of habeas corpus with this Court challenging the constitutionality of his sentence, pursuant to 28 U.S.C. § 2255. Under the name David Livingston, Maxwell also filed a petition for a writ of habeas corpus in the Eastern District of Kentucky, challenging the calculation of his sentence, pursuant to 28 U.S.C. § 2241. *Livingston v. Wilson*, No. 09 Civ. 362 (E.D. Ky. Nov. 1, 2010).

**II. Legal Standard**

Section 2255 provides those in federal custody an avenue through which to obtain review of judgments imposed in violation of the Constitution or laws of the United States. In considering habeas petitions, courts will not readjudicate claims previously raised and rejected on direct appeal. *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). In order to conserve judicial resources and to respect the law's interest in the finality of judgments, claims that were not raised on direct appeal may not be raised on collateral review unless the petitioner establishes both cause for the procedural default and actual prejudice resulting from the error, *or* establishes that the failure to consider the claims will result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).

Establishing cause for the default requires demonstrating "some objective factor external to the defense" that impeded the petitioner's ability to comply with the applicable procedural requirement. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Clark v. Perez*, 510 F.3d 382, 393 (2008). Circumstances giving rise to cause for the default generally include the state's creation

of an external impediment, situations in which the factual or legal basis for a claim was not reasonably known by the petitioner, or ineffective assistance of counsel.  Establishing actual prejudice requires demonstrating that the constitutional errors raised in the petition actually and substantially disadvantaged petitioner's defense so that he was denied "fundamental fairness." *Murray v. Carrier*, 477 U.S. 487, 493 (1986).

### III. Analysis

Pursuant to 28 U.S.C. § 2255, Maxwell moves to vacate, set aside, or correct his sentence on the ground that his sentence violates the constitution and laws of the United States, because, he claims, the B.O.P. did not credit the time spent in service of his original, vacated, 1994 sentence of 40 months toward the service of his subsequent 1997 re-sentencing of 41 months, or the additional term of 48 months for violations of supervised release.

Maxwell argues that this alleged failure of the B.O.P. makes his sentence unlawful for three reasons.  First, Maxwell claims that his 1997 guilty plea was involuntary in violation of the Fifth Amendment because the "guilty plea was induced by an unkept promise of the sentencing court and the Government that he would receive credit on any new sentence related to the offenses of conviction for the time he spent in service for the vacated March 30, 1994 judgment." (Petition for Writ of Habeas Corpus, dated Feb. 23, 2010 ("Pl.'s Mot.") at 3.)  Second, Maxwell claims that his sentence contravenes the provisions of 18 U.S.C. § 3585(b) because "apart from the district court's April 11, 1997 judgment awarding credit for time already served with respect to the vacated 1994 judgment, Maxwell is entitled to have his 48-month violation sentence credited with this time on the basis of the statutory mandate that a prisoner shall be given credit towards his sentence for time spent in official detention as a result of the offense for which the sentence was imposed." (Pl.'s Mot. at 4.)  Third, Maxwell claims that his sentence violates the Fifth

Amendment "because the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment endured under a vacated conviction must be subtracted from any new sentence resulting from the offense of conviction, double jeopardy immediately attached at the point when the 48-month sentence was not credited with time served under the 1994 vacated judgment."  (Pl.'s Mot. at 5.)  In a footnote in his brief, Maxwell also raises a fourth ground for relief, in which he contends that since he was mistakenly released from custody he could not have commenced his term of supervised release and that therefore the district court lacks jurisdiction and he is procedurally "actually innocent."  (Brief in Support of Petition for Writ of Habeas Corpus, dated Feb. 23, 2010 ("Pl.'s Br.") at 6, n.3.)

On May 11, 2010, Maxwell amended his petition to include a Motion to Compel Execution of Judgment by the B.O.P., seeking the execution of the 41-month judgment imposed on April 8, 1997.  On December 2, 2010, Maxwell filed a Motion for Leave to Conduct Discovery, seeking a calculation from the B.O.P. of the 41-month term of imprisonment imposed on April 8, 1997.

### A. Maxwell's Sentence Calculation

The central factual issue underlying all of Maxwell's claims has already been decided by the United States District Court for the Eastern District of Kentucky, in *Livingston v. Wilson*, No. 09 Civ. 362 (E.D. Ky. Nov. 1, 2010).  Maxwell states that "here the core factual and legal predicate of Maxwell's First, Second, and Third claims is the Bureau of Prisons' decision to award towards service of the 48-month violation term credit for only 122 of the 1,041 days that he spent in official detention under the 1994 vacated judgment."  (Pl.'s Br. At 7.)  Maxwell's representation of this core "factual predicate," however, is inaccurate.  As the *Livingston* Court found in considering Maxwell's petition pursuant to 28 U.S.C. § 2241, "the time period Livingston served in prison under *Maxwell II was* credited toward the original term of

incarceration ordered in the April 8, 1997 judgment." *Livingston*, No. 09 Civ. 00362 at 12 (emphasis added).

This Court concurs with the careful analysis of the *Livingston* Court and also finds it binding in accordance with the doctrine of issue preclusion. A party is barred by issue preclusion from "relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

Although Maxwell has styled his current 28 U.S.C. § 2255 petition before this Court as a distinct legal challenge to the constitutionality of his sentence, the factual issue of his sentence calculation and the application of his credits is identical to the factual issue in his prior 28 U.S.C. § 2241 proceeding. The proper calculation of Maxwell's sentence and the appropriate application of credits for time served that Maxwell raises here as the factual basis for his 28 U.S.C. § 2255 petition was the exact factual issue submitted to and determined by the court in *Livingston*. Indeed, the application of credits and the calculation of his sentence in *Maxwell II* was the issue Maxwell litigated before the *Livingston* Court and that the *Livingston* Court decided. Maxwell had a full and fair opportunity to litigate the issue before that court – he was the party that raised the issue, he briefed it fully in his initial filing, and he also filed a reply or "traverse" brief addressing the Government's opposition. The resolution of Maxwell's challenge to the calculation of his sentence was necessary to support a valid and final judgment on the merits by the *Livingston* Court – indeed it was the central issue before that Court. Therefore, this factual issue may not be litigated again before this Court. *New Hampshire v. Maine*, 532 U.S.

8

742, 748-49 (2001); *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 185 (2d Cir. 2011).

The calculation of a term of imprisonment and credit for time spent in confinement prior to sentencing is governed by 18 U.S.C. § 3585.[3] *Reno v. Koray*, 515 U.S. 50 (1995). Maxwell argues that the 41-month sentence imposed on April 8, 1997 was never executed, and thus he was never given credit for the time that he served in confinement. In fact, Maxwell's 41 month sentence simultaneously commenced and concluded on April 8, 1997, taking into account the time that Maxwell had spent in federal custody prior to sentencing as well as his credits for good conduct. *Livingston*, No. 09 Civ. 00362 at 8-9. Because the time Maxwell spent in service of the underlying *Maxwell II* sentence has already been credited against the 41-month sentence imposed on April 8, 1997, it does not qualify as time "that has not been credited against another sentence" under 18 U.S.C. § 3585(b), and cannot be applied to his 24 month sentence for violation of the terms of his supervised release in *Maxwell II*.

B.  Procedural Issues

Maxwell did not previously raise his current claims of an involuntary plea, a sentence calculated in violation of 18 U.S.C. § 3585(b), and multiple punishments for a single crime. Maxwell may not now raise claims that he failed to raise on direct appeal unless he can establish both cause for the procedural default and actual prejudice resulting from the error. Maxwell

---

[3] 18 U.S.C. § 3585 provides that:
"(a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
    (1) as a result of the offense for which the sentence was imposed; or
    (2) as a result of any other charge for which the defendant was arrested after the commission of the offense
    for which the sentence was imposed;
that has not been credited against another sentence."

argues that the cause for the procedural default was that this was a situation in which the factual basis for his claims could not have been known by him until December 14, 2009, when Maxwell had exhausted his appeals to the B.O.P. regarding the calculation of his sentence and the B.O.P. had informed him that it would award him no additional credits. Assuming *arguendo* that this would constitute sufficient cause for Maxwell's failure to raise the issue earlier, Maxwell cannot establish prejudice.

Maxwell was in federal custody on the *Maxwell II* conviction from April 15, 1993 until October 20, 1995, a total of 918 days. He was also awarded credit for time served between January 3, 1991 and June 22, 1991, a further 171 days. Together, these periods sum to a total of 1,089 days, or just over 36 months. Maxwell has not established that the B.O.P. attempted to hold him for any further amount of time in service of his 41 month sentence in *Maxwell II*, but Maxwell now seeks to have that time counted *again* towards his 24 month sentence for violation of the terms of his supervised release.[4] Although a term of imprisonment and a term of supervised release are separate parts of a single punishment for the underlying offense, supervised release is an order of supervision in addition to any term of imprisonment imposed, and a violation of supervised release may result in a cumulative punishment that exceeds the original prison sentence. *United States v. Wirth*, 250 F.3d 165, 170 n. 3 (2d Cir.2001). "The requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified or extended." *United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002). Even if Maxwell were correct that the B.O.P. did not execute his *Maxwell II* sentence,

---

[4] Maxwell continuously misrepresents the two consecutive 24 month sentences imposed for violating the terms of his supervised release in *Maxwell I* and *Maxwell II* as a single 48 month sentence for violating the terms of his supervised release in *Maxwell II*. None of Maxwell's arguments regarding the crediting of his confinement in *Maxwell II*, therefore, have any validity in relation to his 24 month sentence for violation of the terms of his supervised release in *Maxwell I*.

Maxwell has not established that the B.O.P. has attempted to confine him for more than 41 months for his *Maxwell II* conviction plus the 24 months for his violation of the terms of his *Maxwell II* supervised release. As Maxwell requested at his sentencing, he was released from his initial confinement in *Maxwell II* into federal supervision, the terms of which he proceeded to violate. Maxwell bears the burden of demonstrating not merely the possibility of prejudice, but of establishing that there was an error that worked to his actual and substantial disadvantage. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Maxwell has not established a plausible claim that he has been confined longer than the judgment imposed and therefore has failed to demonstrate that he has suffered actual prejudice sufficient to justify collateral relief.

Maxwell's fourth claim, raised in a footnote, that he is actually "innocent" of the supervised release violations because he should have been incarcerated, is also procedurally barred. Maxwell claims that he could not have been on supervised release because he should have been in prison, finishing the sentence that he (erroneously) argues was not executed, and that, therefore, "where no active term of supervised release exists, no violation of its conditions obtains, no matter how innocuous or how egregious the purported conduct may be." (Pl.'s Br. at 6, n.3.) Maxwell acknowledges, however, that he already raised this claim on appeal to the Second Circuit. *Id.* ("Maxwell incorporates by reference the arguments raised in his . . . submissions to the Second Circuit.") Referring to the plain statement in 18 U.S.C. § 3624(e) that "[t]he term of supervised release commences on the day the person is released from imprisonment," the Second Circuit found that "Maxwell's terms of federal supervised release in *Maxwell I* and *Maxwell II* commenced upon his release from state custody in October 1999" and the court thus rejected Maxwell's jurisdictional challenge as without merit. *Maxwell*, 318 Fed.

11

Appx. at 25-26. Maxwell's fourth claim has already been decided by the appellate court and may not be relitigated here. *See Yick Man Mui*, 614 F.3d at 53.

Because his claims are procedurally barred, Maxwell's motion to vacate, set aside, or correct the judgment entered by this Court on April 8, 1997 is therefore denied.

### C. The Merits

Even if Maxwell's claims were not procedurally barred, they could not succeed on the merits. All of Maxwell's claims rest on two mischaracterizations of the facts: first, that his *Maxwell II* sentence was never executed; and, second, that he never received credit for the time he spent in federal custody in service of that sentence. Because it is clear that Maxwell did receive credit for the time that he had already spent in custody when his sentence in *Maxwell II* commenced and concluded on April 8, 1997, there is no basis for his claims. There was no involuntary plea, because Maxwell was credited the 40 months he served as the Court instructed. The B.O.P. did not contravene 18 U.S.C. § 3585(b), because it did credit Maxwell the 40 months that he had already spent in custody in service of *Maxwell II*. Maxwell was not punished more than once for the same crime because his 41-month sentence imposed on April 8, 1997 did credit the time Maxwell had already served on the vacated conviction. And, finally, Maxwell was not mistakenly released, but regardless, his term of supervised release commenced on the day Maxwell was released from imprisonment, and the Court properly had jurisdiction over his violations of supervised release.

### D. Motion to Compel Execution

As a supplement to his motion, Maxwell filed a "Motion to Compel Execution of Judgment by the Federal Bureau of Prisons." Maxwell requested an order directing the B.O.P. to execute the April 8, 1997 judgment and to credit the time he served in custody under the vacated March

30, 1994 judgment towards the 41-month sentence in the April 8, 1997 judgment.  As discussed above, the B.O.P. executed the April 8, 1997 judgment and credited toward it the time Maxwell served in custody pursuant to the vacated March 30, 1994 judgment.  This motion is therefore moot, and is dismissed.

      E.   <u>Motion for Leave to Conduct Discovery</u>

To further supplement his motion, Maxwell filed a "Motion for Leave to Conduct Discovery."  In that motion, Maxwell sought to have the B.O.P. provide the parties and court with a calculation of the 41-month term of imprisonment imposed on April 8, 1997.

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  Although a District Court must hold an evidentiary hearing when presented with any potentially meritorious claim under section 2255, a hearing is not required when, viewing the "record in the light most favorable to the petitioner," it is clear that the petitioner has failed to establish a "plausible claim."  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).

The issue of fact with regard to which Maxwell seeks discovery has already been determined by the *Livingston* Court.  This Court is bound by the *Livingston* Court's determination of the issue, and, therefore, a hearing would be fruitless, as there is no genuine issue of fact remaining.  The records of the case conclusively show that Maxwell is not entitled to relief.  Accordingly, Maxwell's motion for leave to conduct discovery is denied.

## IV. Conclusion

For the foregoing reasons, the Petitioner's motion to vacate, set aside, or correct the judgment is DENIED. The Petitioner's motion for leave to conduct discovery is also DENIED and the Petitioner's motion to compel execution of the judgment is DISMISSED as moot.

As Maxwell has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).

**The Clerk of Court is directed to close this case. Any pending motions are moot.**

SO ORDERED.

DATED: New York, New York
April 9, 2012

_____
KIMBA M. WOOD
United States District Judge

14